'Catherine Dempsey, as Administratrix, etc., of John J. Dempsey, Deceased, Respondent, v. The New York Central and Hudson River Railroad Company, Appellant.

*Death resulting from negligence — duty of a railroad company to use care for the safety of a person employed by its contractor and necessarily crossing its tracks.*

Upon the trial of an action brought to recover damages resulting from the death of the plaintiff's intestate, alleged to have been caused by reason of the defendant's negligence, it was shown that the deceased, who was crushed to death by the coming together of two cars upon the defendant's tracks, was not a mere volunteer on the tracks of the railroad corporation, but that his relations to certain work which his employer had contracted with the railroad company to do required him to go to and from the work over the railroad tracks.

*Held*, that in doing so he had rights which it was the duty of the railroad company to recognize;

That if the company was advised that the plaintiff's intestate, while engaged in the work of performing the contract made between it and his employer, was' for that purpose passing over its tracks, through an opening between its cars, the company owed to him the duty of using reasonable care for his protection, and of providing that he should not, while so engaged, suffer injury by its negligence.

Appeal by the defendant, The New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 5th day of June, 1894, upon the verdict of a jury rendered after a trial at the Erie Circuit, and also from an order entered in said clerk's office on the 4th day of June, 1894, denying the defendant's motion for a new trial made upon a case containing exceptions.

*James F. Gluck*, for the appellant.

*Charles Oishei*, for the respondent.

Bradley, J.:

The death of the plaintiff's intestate was caused by cars suddenly coming together while he was between them upon the track in the defendant's yard at Buffalo, on December 13, 1892. The question is whether the charge that the death was the result of the negligence of the defendant is supported by evidence.

On October 6, 1892, the defendant entered into a contract with W. J. Gillette, whereby the latter agreed to repair, in the manner

specified, the roof of the trainshed of the Exchange street passenger station of the defendant, at the city of Buffalo, and to commence the work within five days. Gillette sublet the work to one Talbut, who proceeded to perform it. He employed Dempsey as foreman, who acted in that capacity until his death. In the rear, *i. e.*, the south side of the building, and between it and Green street, were two parallel tracks running east and west. And south of Green street was also a track upon which the defendant placed a car for the use of the contractor. It was designated as a tool car. In that car much of the material for the work was kept and prepared for use, and was taken from there to the building from time to time, as wanted for use in the work upon the roof, and the workmen, in number from twelve to eighteen, deposited their lunch pails in the car, and there ate their lunches. The material for the work was taken from the tool car across the railroad tracks of the defendant to the depot building and hoisted on to the roof.

The track next to the building was mainly appropriated to the use of the switch engine in switching cars; none were left upon it. That track was generally clear. The next track south of it was occupied by passenger, mail and baggage cars placed there and taken from it as the business of the company required. And for the convenience of crossing that track in going from and to the tool car the evidence on the part of the plaintiff tended to prove that in the outset of the work the defendant's head switchman or switch conductor, as he is sometimes called, was requested by Dempsey and promised to make and leave an opening for the workmen to pass through between the cars; that the opening was so made and used; that it continued substantially all the time up to the time of Dempsey's death, and that being found closed on one occasion about two weeks before the accident, it was on a like request opened, and so remained up to that time. This is contradicted by the head switchman, who testified that no such request or promise was made, that no arrangement was made to that effect, and that he knew of no opening being kept there prior to the accident. And the defendant gave evidence tending to prove that the switch conductor had no authority to effectually make such an arrangement.

The defendant, through its agencies, was advised that the tool car was used by the contractor in connection with the work, and that

he, by his employees, was engaged in the performance of the contract. And the jury were permitted by the evidence to find that the workmen frequently each day carried materials for the work from the car to the building, and in going back and forth for such purpose passed over the defendant's track through an opening between the cars standing upon it, and that this was known to the company through those conducting its business in and about the premises.

In view of such facts the deceased and his co-employees were not mere volunteers upon the defendant's tracks. Their relation to the work required them to go to and from it, and in doing so they had rights which it was the duty of the defendant to recognize, and assuming (as we may, upon the finding of the jury) that the defendant was advised that the persons engaged in the work of performing the contract were for that purpose passing over its tracks through an opening or at the place in question, the defendant owed to them some duty to use reasonable care for their protection, and that they should not while so engaged suffer injury by its negligence. (*Indermaur* v. *Dames,* 2 L. R. [C. P.] 311; *Smith* v. *Dock Co.,* 3 id. 326; *Newson* v. *N. Y. C. R. R. Co.,* 29 N. Y. 383; *Driscoll* v. *Lime & Cement Co.,* 37 id. 637; *Stinson* v. *Railroad Co.,* 32 id. 333; *Murphy* v. *Railroad Co.,* 118 id. 527; *Young* v. *R. R. Co.,* 30 Barb. 229; *McDermott* v. *R. R. Co.,* 28 Hun, 325; *Goodfellow* v. *R. R. Co.,* 106 Mass. 461.)

The question of negligence on the part of the defendant was submitted to the jury, and it had for its support the facts that the switchman shoved some cars down an incline against the west end of the cars on the track with such force that the gap, in which the deceased was at that moment, was suddenly closed, causing his death.

This was done without any signal or warning to apprise him of the danger. And there is evidence tending to prove that he was chargeable with no contributory negligence. He left the tool car and was proceeding towards the building where the work was being done under his direction, and the evidence is to the effect that he looked in the westerly direction as he approached the track; that the cars which were run in on to the track there came on a curve around the west end of the depot and could not be seen by him, and that

there was a dirt car on a spur of the track at the west end which was also some obstruction to his view of the cars so brought on the track. The witnesses testify that they heard the crash, and then saw that the deceased was pinned or crushed in between the cars where the opening was through which he attempted to pass. The conclusion is permitted that the cars might have been put on to the track at the west end of the standing cars in such manner as not to move the one at the place of the injury, and that a notice or signal could, in some manner, have been given to warn the workmen of the danger which might arise from the sudden movement of the cars standing there.

It is urged by the learned counsel for the defendant that it was practically impossible to provide for or maintain an opening for the workmen to pass through upon this track, because the defendant was constantly putting cars upon it, and, as they were wanted for use, taking cars from the track, and that in doing so necessarily had to move more or less the cars upon it, and that the deceased must have known that this was being done. While there is much force in that suggestion, founded upon the evidence, the facts before mentioned which the jury could find still remain, that the workmen, for the purposes of the business in which they were engaged, were, with the knowledge of the defendant, frequently crossing the track, and the use which was made of the track by the company did not necessarily deny to its servants the opportunity to use such care as was reasonable under the circumstances for the protection of those workmen against injury by the movement of its cars.

The case may be a close one. But the facts were fully and fairly submitted to the jury. The conclusion is that the verdict is supported by the evidence.

The judgment and order should be affirmed.

DWIGHT, P. J., LEWIS and HAIGHT, JJ., concurred.

Judgment and order appealed from affirmed.